May it please the Court, I'm Marty Sippel with the Aussie-McMullin Law Firm in Tallahassee, Florida, here on behalf of the appellants, American Bioscience Incorporated and Dr. Chen Lin Tat. Your Honors, I'm pleased to report that this case will not involve anything quite so complicated as algorithms and the things we were discussing in the last case. The question in this case, very simply, is who won and who lost the underlying litigation? And ABI would submit that it won the underlying litigation and is therefore entitled to its cost. As I read the district court's opinion, I thought the district court went even a step further and said, even if you won, he still wouldn't award costs because it was protracted litigation, it was complex, and nobody was wholly victorious. If he has gone the further step of saying, even if there is a prevailing party, they Well, Your Honor, that's a good question, and there is an abuse of discretion in that judgment. Because the 11th Circuit, which is the regional court, and pursuant to this court's rulings in Manildra, in particular, I'm not sure I'm pronouncing that right, but it's 76 F. 3rd 1178, once the prevailing party determination is made, which is a de novo review by this court, then in terms of the discretionary aspect, that is based upon the standard of the regional circuit. In the 11th Circuit, a district court does not have, as we say, unfettered discretion to deny costs to the prevailing party. And the case I cited here is Chapman 229 F. 3rd 1012 at 1039. In the 11th Circuit, the prevailing party can only be denied costs if the denial is based upon a rationale that's in the nature of a penalty. The district court has to find and make express findings that the prevailing party, for some reason, did something wrong or engaged in some sort of conduct that would, despite the fact that it prevailed as a penalty, the district court would take away those costs. Now- Then we should concentrate on the prevailing party aspect of what the district court did. There still is a certain amount of flexibility, is there not, in determining when a party doesn't win on all of the claims as to who's prevailing? Well, flexibility, Your Honor, I mean, there is standards. And I mean, just to close the loop on that last question, I think everyone would agree that there's nothing in the district court's order that would indicate any conduct by my clients in the nature of a penalty which would justify not awarding costs. I mean, protracted litigation, complex issues, that's every case this court faces. And so that's certainly not a basis to exercise discretion. Now, to your question, Judge Newman, again, I'll cite the court to the Menilder case, which is a very important case on this particular narrow doctrine of costs. To be prevailing in a litigation is a defined term of art. And it's really, this court has defined it as having two particular prongs. One, you have a decision on the merits. And two, you have a decision on the merits that changes the status of the parties legally. Did you pay royalties on the settlement? Excuse me, Your Honor? Did the settlement result in the payment of royalties? No, Your Honor. The settlement was just a straight out private settlement. Any money change hands? Oh, yes, Your Honor, $300,000. What royalties, though? Well, but $300,000 sounds to me like a legally significant amount. It's not immaterial, Your Honor. It's a $12 million claim with punitive damages and triple damages and every other kind of enhanced claim you could make. But I don't think it's appropriate, and that's one of the main points here, I don't think it's appropriate as a matter of public policy to get into a debate about whether a $300,000 settlement on a $15, $20 million, $30 million, $40 million claim makes us the winner or makes them the winner. It's a settlement. And exactly what it is, it's a settlement. There was an offer and an acceptance.  If it's a settlement, as you're characterizing it so emphatically, where's the victor? The victor is in the case that was tried. The case, and this is important, and again I go back to Mnildre. The reason a country lawyer like me from Tallahassee, Florida, is in this august setting is because this is a patent case. And the patent case was that Taxilog, who's a competitor of my client, had a patent application in the PTO. And it was being blocked by my patent, the 653 patent, my client's patent. And so the claim that was tried was a change of inventorship claim where they sought to get their personnel added to the list of inventors which would then, for various very complicated legal doctrines in patent law, eliminate our patent as a blocker to their patent application and allow them to move forward. They lost. The result of the claim in ABI 1 was that ABI's patent was upheld. The inventors on the patent are only the ABI personnel. Therefore, that patent is still valid, enforceable, can be pursued by my client, and still acts as a block to whatever patent application may still be pending in the taxilog tax. Now in the Mnildre case, the party that was in the same shoes as my client actually lost on the merits of state law claims that were associated with that central patent claim. And still this court awarded the winner on the patent claim a cause because it said it's a unique. As I said, the reason we're here is because of the patent jurisdiction. And so that should be the driving force in determining who's the prevailing party. In this case, it's even easier. We didn't lose on anything. If you scour this six-year record, you will not find a claim that my client lost on the merits. There was a settlement. By the way, Judge, the settlement was with MSU, the university, which is not even a party to this appeal, number one. Number two, as to the parties to this appeal, taxilog MDS, every single claim that they asserted, counts 1, 2, 3, 4, 5, 6, 7, were resolved in favor of ABI on the merits, either by dismissal, summary judgment, or as a result of the trial that ultimately was adjudicated by this court. So where is the basis for saying that my client is not the prevailing party? It's just not there. Now, if you look at the district court's opinion, what you say is, well, the judge said, well, they voluntarily dismissed some claims early in the litigation without prejudice. Well, then the district court says, but I don't think that makes taxilog a prevailing party, but I'm going to factor that into the mix. Well, that's just not a legal basis. If you go back to Manildra, not on the merits, it didn't change the status. We could refile those infringement actions today if there was a basis for it and go back and perhaps prevail. So the fact that you voluntarily dismissed something without prejudice certainly cannot be the basis to say somebody prevailed. Then there's a discussion of the settlement, which we've already discussed. It can't be a reason. And then there's a discussion of this Dr. Sanford issue, which we didn't even contest. ABI didn't even contest. One of its personnel was taken off. Fine. We didn't even appeal that because it didn't change the substance. The crux of the patent case was the taxilog FSU inventors trying to be added to the patent. That's what would have changed the legal status between parties. That didn't happen. They lost. Still our patent. How much is at stake here? You're not talking about attorney's fees, right? No. Entirely statutory costs. Statutory costs. $149,000, Your Honor. And it's all laid out. And, Your Honor, quite frankly, there's some issue made in the briefs about the bill of costs. We believe, ABI believes, that it's not in our interest, it's not in taxilog's interest, and it's not in this court's interest, and it's not in the public's interest for there to be an ABI Roman numeral 4. I mean, this case needs to be resolved once and for all. And the materials are in the record. The brief of taxilog and the others does not contest the amounts. There's no argument about the amounts. And so we would submit that for the reasons I've given, my client was the prevailing party. You can imagine that there's no basis in the record, in the district court's opinion, for any discretionary exercise to deny costs as a penalty, and that the amount is undisputed and uncontested, and therefore this court should go ahead and enter judgment in my favor. Look. Go ahead. I'm sorry. You were just going to say enter judgment in your favor? In my client's favor for $149,436.09. Okay. Let me ask you a question to change the facts a little and see if I understand your position. Suppose that two plaintiffs sue your client as defendant on, let's just make it simple, for patent infringement. And the case goes to trial and you are found liable for a million-dollar judgment for infringement with respect to the first plaintiff. You make a motion at the close of the case, which renews a motion you've made previously, to dismiss the first plaintiff for lack of standing, let's say. And you succeed. The judge says, you know, I've listened to this whole case and I think you're right, that the first plaintiff ought to go away for lack of standing. And then a judgment is entered against you for a million dollars. Would you say that you're entitled to costs with respect to the second plaintiff? The one who won a million dollars? No. The one who was dismissed on your motion. Yes. And you get all of your costs? Well, not the costs. I think you'd have to split it up. Well, how would you split it up? You get half your costs? You've had the whole trial. Yes. The whole trial has resulted in a complete victory for plaintiff number one and dismissal of plaintiff number two. All right. You've had the costs. The other side has had costs. What do you do with respect to plaintiff number two in terms of how would the district court go about determining the allocation of costs? Well, that's a good question. It's a case. Well, it started with this case. No, it's not this case. It's a large measure. I mean, it's got a lot in common with this case. Well, let me tell you why it's not this case. All right. Because in that case, you've got different one party winning or the defendant winning a claim and losing a claim on the merits. Well, I'm focusing on the FSU. It's not on the merits. You mentioned early on FSU is not a part of this, and therefore, we really oughtn't think about FSU. That's right. But if that's the case, then in my hypothetical, you wouldn't think about the fact that you just lost a million dollars to plaintiff number one. Right. We'd be focusing only on the other one. So what's your answer with respect to that? Well, I think the answer, I mean, truthfully, Your Honor. That's what we're looking for, truth. If I was a judge, and nobody's asking me, but I think that it's the cost incurred in defending the suit. And so you'd only – it'd really only be the cost incurred in determining that that party didn't have standing. I mean, honestly, I think that would be only reasonably what you could ask for. And so if there was a deposition that was pertinent to determining the standing issue, I think that deposition would be part of the cost. But if there's other depositions that didn't have anything to do with that, then I don't think that's the situation. It wouldn't be recoverable. But here, again, it's – there's no other determination on the merits against my bargain. So it's a completely different hypothetical in my view. I'm going to try to reserve – if that answers your question. Thank you. Okay, thank you. Okay, yes, we'll save some time for rebuttal, Mr. Sidman. Thank you. Mr. Matthew. Yes, where's the court? I'm Sid Matthew for the Appellees. Last time we were here on the second appeal, Judge Michelle said, the way this starts is you sue them for patent infringement. You end up paying $300,000 in the settlement, and somehow you feel like you're entitled to costs. Judge Michelle followed it up with, because we all know what the inevitable outcome is going to be here. You're not going to get costs, and we're just wasting time and churning litigation and slowing up other cases that have merit. ABI sued the Appellees in California for patent – for three things, patent infringement, declaratory judgment, and damages. All of those cases were dismissed upon risk of being awarded Rule 11 damages against them, because we had no – we were never making the patent, never intended to make the products under the patent, had no interest in doing that. Our concern was we had an employee who went to a California company and gave them a formula that we were working on and showed them how to make the compounds. That was of concern to us. Their case was transferred to Tallahassee. All of their claims were dismissed. Three claims against three plaintiffs. That resulted in the district judge realigning the parties. We actually then became the plaintiffs on our counterclaims. We brought counterclaims against them. Now, FSU had assigned the patents in question, the compounds and the processes, to the other two parties. They were linked together inextricably. So that was why your question, Judge Bryson, was so astute, if I can be so bold as to call it that, because they were connected, closely so. And the district judge ruled FSU really owns the patent because they were assigned to FSU, controls it, and therefore the case should be brought in the name of FSU. So he then dropped the claims against MDS and tax law, but we still went forward. And what happened next is very interesting. On the trade secrets damages case, ABI proposed a $300,000 settlement. Now, we know what nuisance settlements are. This is not a nuisance settlement. It was $300,000 and it was paid by ABI. That settlement counts one through six. The case went to trial on a declaratory judgment count number seven. They defeated that claim. He mentions the Manildra mining case or milling case. That was a case where someone went forward in court and won a patent infringement case. That's not this case. This is a case where, among other claims, which resulted in a Rule 68 judgment that they never appealed from, they took it to the district judge and argued the same thing they're arguing here. It was just a settlement. The district judge said, no, it was a judgment, and he upheld it. They never appealed that. They're stuck with it. That's one of the problems that they've got here, that they cannot claim that the district judge abused his discretion. When all of their claims were dismissed, a $300,000 Rule 68 judgment was entered against them, and they simply defeated our claim to declare their patent invalid because of an equitable concept. Mr. Matthew, Mr. Sippel and I had a discussion about the district court's discretion to deny fees, and he raised the Chapman case dealing with the fact that the discretion is not unfettered. Now, as I remember, Chapman, it relied on Head, where the district court had offered no explanation, and the court sent it back to get an explanation, and that was what was meant by no unfettered discretion. Here we have a pretty decent explanation. Doesn't that take us out of the Chapman category of case? Not only are you correct on that point, but I was looking at the Ruiz against Chance case, which both of you were on, which said an award of cost under Rule 54 falls within the discretion of the trial court even if a party satisfies the definitions of prevailing party, the district court retains broad discretion as to how much to award, if any. In other words, not only are you right that the district judge, even if he determined they were a prevailing party, could, in his discretion, sound discretion, providing the opinion that he did here, rule this was a seven-year protracted case. This involved claims, multiple claims on both sides. No one was the clear winner. It was a mixed outcome, and he could determine, lawfully so, in his discretion, no cost or awardable. Well, Mr. Sipple says that the discretion doesn't apply as to the initial determination as to who was prevailing, just as to what happens thereafter. He says the Eleventh Circuit has resolved that. Do you agree? No, I don't. What I contend is that the law is that the judge retains discretion and must articulate it for judicial review, as he has done here. This is not a case where the judge has simply said, I arbitrarily say you're not awarded any costs. Now, as to the significant relationship of the parties, which is one way to look at the issue, they argue, we really changed the way things are done. Well, actually, they didn't. They initiated the litigation thinking that it was very important to bring a case for patent infringement, damages, and declaratory judgment. And then when it was brought to their attention almost a year later that their case had zero merit, they were forced under threat of Rule 11 sanctions to dismiss what they now are saying were the significant claims that were near and dear to them. So they did not change any of the significant relationships between the parties. And, of course, what did they gain? They lost $300,000. They defeated a declaratory judgment claim. That was the beneficial thing that they did for their client. We, with all due respect, did not lose this case. The district judge was right. Nobody really won this case. There was not a clear winner. He articulated the reasons for that. How can that be converted into an abuse of discretion? It just simply doesn't make sense. He viewed the case as a whole, which is what the district judge has to do. What's happening here is it's being piecemealed down. They dropped the appeal against FSU so that there would be a narrow focus upon the hypo that Judge Bryson brought up. So what they've raised is basically a hypothetical question that is not before the court, because there is sufficient basis for the district judge's conclusion that they were not the prevailing party. But even if they were, the district judge has properly exercised his discretion to say, I do not believe in my sound discretion there should be cost allurement. And I think that that is the case in a nutshell. I don't think that there's any reason for me to belabor the point, unless there are any additional questions. Any questions for Mr. Matthews? I would like to just mention one other thing. You raised the question as to cost. The costs were never presented there. On the last appeal, you astutely raised the question, did you ever file a bill of costs before the district judge? The answer to this day is no. They filed for the first time an affidavit of costs before this court. And they now argue that you, on your own, acting as trial judges, should review it. And if you did, what you would find is a request for $50,000 in Xerox costs, $50,000 in travel and subsistence, and then the balance. But it is very bizarre for a lawyer to file evidence before an appellate court that was never presented before the district court. And with all due respect, in defense of the district judge's decision, he has never even seen the affidavit of costs and was never presented that. And having lost three times before the district judge, I think that Mr. Sippel simply feels that his chances are better before you, if you would put on your trial judge's hats. I think that's probably not the way to go. Okay. Thank you, Mr. Matthews. Mr. Sippel? Thank you. I'll be very brief. I just want to point out a couple of record sites to address some of those points. First, on the last point first, the mandate from this court in ABI 2, which is founded, the record of A550, says, as a result, this court reverses the order of the district court in ABI 2 and remains to permit the district court to consider ABI's motion to tax costs. So I would submit, Your Honors, that had I simply went back and filed a bill of costs as opposed to teeing up, to be global, my motion to tax costs again, we've heard a lot about Rule 11, I've heard a lot about it throughout this case, but I keep winning. But the, I think there would have been a complaint about that. So I think I was trying to follow the mandate of the court on that. Second of all, on the initiation of the litigation, I will direct the court to A105, which is the complaint that was filed by Tax Law, MDS, and FSU to initiate this litigation. And there was all kinds of skirmishing about whether it was going to be in Florida or California. But the litigation was initiated by the A105. And the initial complaint at A105 was voluntarily dismissed by Tax Law, MDS, and FSU at A137. And a judgment was entered in favor of my clients at A140. Now, interestingly, the judge did not tax costs against them when they voluntarily dismissed their first case without prejudice. Because that would have been absurd, just as it would be absurd to hold that my client did not prevail despite the fact that they voluntarily dismissed the case early in the litigation. On this issue of the inextricable intertwining of these various parties, I would direct the court to A191, which is the operative pleading of Tax Law and MDS in the litigation, the seven-count counterclaim. And A233, which is a separate pleading asserting these seven counts asserted by FSU, the university. Now, I would submit to the court that this court sees hundreds of thousands of patent cases. And how many cases come before this court when there's multiple parties when they file their complaint in separate pleadings? Does that tell you something about whether these are actually inextricably intertwined? They filed their complaint in two separate pleadings. They're totally different. They thought they were totally different. They filed in separate pleadings. And finally, I would direct the court to A435 and A436, which is the offer that has resulted in the settlement that we hear so much about. There is no mention whatsoever in that offer that my client made, ABI, of accepting a judgment or taking a judgment or any judgment whatsoever. The deal was $300,000 in exchange. They will dismiss their claims with prejudice. They breached it. They didn't do that. They cannot bootstrap a judgment that should have never been entered in the first place into a basis to deny my client cause. Thank you, Your Honor. Thank you, Mr. Semple. Mr. Mathew, the case is taken under submission. Thank you.